UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


MARTIN WOLFE,

              Plaintiff,                       CIVIL ACTION NO. 08-10628

          v.                           DISTRICT JUDGE JOHN FEIKENS

GC SERVICES LIMITED            MAGISTRATE JUDGE VIRGINIA M. MORGAN
PARTNERSHIP-DELAWARE,

              Defendant.
_____/

## REPORT AND RECOMMENDATION

### I. Introduction

      This matter comes before the Court on Defendant's Motion to Dismiss Based on

Plaintiff's Spoliation and Fabrication of Evidence and Other Discovery Misconduct and, in the

alternative, for Failure to State a Claim and For Summary Judgment (D/E #7). Plaintiff has filed

a response in opposition to that motion (D/E #10) and defendant filed a reply to that response

(D/E #11). On November 17, 2008, a hearing was held on the motion. For the reasons discussed

below, it is recommended that defendant's motion be **GRANTED** and that plaintiff's complaint

be dismissed as a sanction for plaintiff's misconduct. In the alternative, it is recommended that

plaintiff's claims pursuant to the Michigan Collection Practices Act be dismissed for failure to

state a claim upon which relief may be granted and that defendant be granted summary judgment

as to the rest of plaintiff's claims.

## II. Background

Defendant is a third-party debt collector that was hired by the Education Credit Management Corporation (ECMC) to collect a student loan plaintiff allegedly owes. Plaintiff denies that he owes the debt and he alleges that defendant violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"), the Michigan Collection Practices Act, M.C.L. § 445.251, *et seq.* ("MCPA"), and the Michigan Occupational Code, M.C.L. § 339.915, *et seq.* ("MOC") while trying to collect on the debt.

### A. Factual Background

For ease of reference, plaintiff's deposition transcript will be referred to as follows:

> Dep = Deposition of Plaintiff Martin Wolfe, August 19, 2008 (pp. 1, 6-9, 34-46, 54, 62-63, 65, 69, 72, 78-89, 106-107, 114-117, 122, 124, 126-129, 145, 148, 150-153, 164, 166-181, 184, 190, 194-197, 203, 210-213, 216-217, 221, 226-241 attached as Exhibit 17 to Plaintiff's Motion for Summary Judgment)

According to its records, on or about October 1, 2007, defendant began attempting to collect the debt through letters and telephone calls. (Defendant's Collection Notes, attached as Exhibit 1 to Defendant's Motion for Summary Judgment)

Plaintiff testified at his deposition that he started receiving calls from defendant on plaintiff's land line (Dep, pp. 9, 211-212) at least a couple months before October 11, 2007 (Dep, p. 83) and that the first call he received was from a woman. Defendant also testified that the woman identified herself as working for defendant, but she was also rude and obnoxious. (Dep, pp. 82, 84-85)

Plaintiff repeatedly testified that he received calls from defendant every day from then on until February 2008. (Dep, pp. 85-86, 114, 237)  According to plaintiff's deposition testimony, his phone records would reflect that he received a call from defendant every single day and many times a day. (Dep, pp. 86, 127)  The only phone records provided by the parties are Vonage phone records for plaintiff's land line number[1] from August 9, 2007 through December 20, 2007. (Phone Records, attached as Exhibit 2 to defendant's motion for summary judgment)  According to defendant's brief, they were the only phone records provided by plaintiff in discovery and plaintiff's attorney stated at deposition that defendant has every phone record plaintiff possessed (Dep, p. 203).[2]

In support of its motion for summary judgment, defendant produced an affidavit of Marcel Montferrand, defendant's Director of Telecommunications, in which Montferrand identified five numbers that appear in plaintiff's phone records and that belong to defendant. (Affidavit of Marcel Montferrand, ¶ 5, attached as Exhibit 3 to Defendant's Motion for Summary Judgment)  Reading that affidavit in conjunction with the phone records, it appears that defendant's employees called plaintiff approximately twenty-five times between August 8, 2007 and December 18, 2008.[3]  It also appears from those records and affidavit that the earliest

---

[1]Plaintiff's home telephone was (734) 654-2579 and his service was through Vonage (Dep, p. 7).

[2]Plaintiff also testified that AT&T provided his phone service at one point and that defendant called him during that time, but he did not identify what time period he was referring to (Dep., p. 122) and no phone records from AT&T are part of the record.

[3]This Court would note that, as part of its Exhibit 5, defendant highlighted in orange the calls made to plaintiff by defendant from the five numbers identified by Montferrand.

defendant called plaintiff was 8:59 a.m., while the latest defendant called plaintiff was 8:22 p.m. It further appears from those records and affidavit that the most defendant called plaintiff in one day was three times: on November 8, 2007, defendant called plaintiff three times with the duration of the calls being thirty-nine minutes, one minute and eighteen minutes.

In his response brief, plaintiff does not dispute defendant's characterization of the phone records and he makes no attempt to link any other calls in the phone records to plaintiff. Numerous calls in the phone records are starred and highlighted in yellow, but it is unclear who starred and highlighted those calls. Plaintiff did testify that, during a break in his deposition, he asked his wife about the stars and she said that they were all calls from defendant (Dep., p. 184), but plaintiff concedes that he does not know for sure (Dep., p. 190) Plaintiff also testified that he called some of the numbers listed as "anonymous" in the phone records to confirmed that it was defendant who called and that his phone records should reflect those outgoing calls. (Dep., p. 221). However, he fails to point to identify any such outgoing calls in his response to defendant's motion for summary judgment.

Plaintiff also testified that he told defendant every time they called to stop calling him (Dep, p. 115), that defendant called him a liar at least five times (Dep, p. 87), that defendant said plaintiff was milking the system at least twice (Dep, p. 88), and that defendant threatened to sue plaintiff at least five or six times by saying "We will take you to court to collect this debt" (Dep, p. 151). Plaintiff further testified that, once, a man claimed that defendant could place a lien on plaintiff's property, garnish his wages, access his bank accounts and do whatever they wanted to. (Dep, p. 153). According to plaintiff's deposition testimony, defendant also used obscene

language and "implied" profane language.  (Dep, p. 145)  When asked to provide an example of implied profane language, plaintiff could not do so.  (Dep, p. 145)

Plaintiff did testify that, during that time he was receiving calls from defendant, he was also receiving calls from ECMC and possibly other debt collectors (Dep, p. 115), and that, if someone called him and was nasty, they could have been from somewhere other than defendant (Dep, p. 232).  For example, a caller from the Federal Student Aud. Office of the Ombudsmen was nasty.  (Dep, p. 233)

During the course of discovery, plaintiff produced a Collection Communications Log (the "Log") as evidence of the calls defendant allegedly made.  (Collection Communications Log, attached as Exhibit 2 to Defendant's Motion for Summary Judgment).  According to plaintiff's deposition testimony, the Log was "the record of the phone calls I got from [defendant] that I documented on advice of my lawyer."  (Dep, p. 169)  Plaintiff also testified that some of the calls were documented by plaintiff while others were documented by his wife, but he could not identify who entered each entry.  (Dep, p. 170)  Plaintiff did try to identify which entries were in his writing (Dep, pp. 170-171, 173), before eventually stating that all the entries were made by plaintiff and that he had copied the data from a different document, one in which both he and his wife made entries.  (Dep, p. 176)  Plaintiff also testified that the Log was copied from the original document and that plaintiff no longer has the original document because he threw it away.  (Dep, p. 174, 176)

The Log produced by plaintiff purports to identify twenty phone calls defendant's representatives made to plaintiff at various times of the day between November 30, 2007 and

December 30, 2007.  (Collection Communications Log, attached as Exhibit 2 to Defendant's Motion for Summary Judgment)  At his deposition, plaintiff acknowledged that the calls were not in sequential order and he testified that this was the case because plaintiff had been using different scrap paper to record calls and he just copied them together.  (Dep, p. 216)  Plaintiff also acknowledged that, even if everything in it was accurate, the Log did not show defendant calling ten to fifteen times in one day.  (Dep, p. 177)

According to plaintiff's initial deposition testimony, every single call recorded in the Log was from defendant and plaintiff knew when defendant called because of his caller ID.  (Dep, p. 170)  However, during the course of the deposition, plaintiff conceded that he either did not know if certain calls were from defendant or that the calls were not from defendant.  With respect to call number two on page one of the Log, plaintiff testified that no one spoke to him when he answered the phone and that he just assumed it was defendant who called.  (Dep, pp. 227-229)  With respect to call numbers seven and eight on page one of the Log, plaintiff's counsel conceded that they were calls from plaintiff's attorney's office (Dep, p. 217) and plaintiff testified that he logged the calls as from defendant because he did not recognize the number and he just assumed they were from defendant.  (Dep, p. 217)  With respect to call numbers nine and ten on page one of the log and call numbers four and five on page two of the Log, plaintiff conceded that he did not know if the calls, from numbers with a 734 area code, were from defendant. (Dep, pp. 230-232, 234-235).[4]  With respect to call number three on page

[4]The 734 area code covers Monroe, Michigan and according to the affidavit of Marcel Montferrand, defendant's Director of Telecommunications, defendant's employees only called plaintiff from Columbus, Ohio.  (Affidavit of Marcel Montferrand, ¶ 3, attached as Exhibit 3 to

two of the Log, plaintiff testified that the call was not from defendant and, instead, was from the Federal Student Aid Office of the Ombudsmen and that plaintiff had identified the call as coming from defendant because he did not recognize the number. (Dep, pp. 233-234) With respect to call number five on page two of the Log, plaintiff testified that he did not know if it was from defendant after defense counsel told him that the call came from a Holiday Inn Express in Dundee, Michigan. (Dep, p. 235)

The Log also purports to document how defendant's representative acted during the phone calls in a section labeled "What Did Collector Say? Amount Demanded? Payment Terms? Threats? Profanity? Harassment? Legal Action? Calls to Friends or Neighbors? Abuse? (Use as many lines or pages as needed)" (Collection Communications Log, attached as Exhibit 2 to Defendant's Motion for Summary Judgment). Call number one on page one states that plaintiff was cussed at, but plaintiff testified that he did not know what was said exactly. (Dep, pp. 226-227). For seven of the calls, plaintiff wrote "wouldn't answer" or ditto marks indicating "wouldn't answer" (Collection Communications Log, attached as Exhibit 2 to Defendant's Motion for Summary Judgment), and plaintiff testified that "wouldn't answer" meant that no one spoke to him when he answered the phone and that he just assumed it was defendant who called. (Dep., pp. 227-229) For the remaining calls, plaintiff wrote "nasty" or ditto marks indicating "nasty" (Collection Communications Log, attached as Exhibit 2 to Defendant's Motion for Summary Judgment) and plaintiff testified that nasty to him meant defendant told him "Your name, your Social Security, your debt, and you're going to pay."

Defendant's Motion for Summary Judgment)

- 7 -

(Dep, p. 229)  However, plaintiff also testified that not of all the calls where plaintiff used ditto marks indicating nasty were actually nasty.  According to plaintiff, "I started copying everything. I just didn't want to write so I just marks [sic]."  (Dep, p. 230)  Plaintiff also testified that he would put "nasty" down even if someone was not necessarily nasty because he "was tired of writing."  (Dep, p. 234).

During a break in his deposition testimony, plaintiff added "a.m." or "p.m." to the times on the Log.  (Dep., p. 238-239)  At first, plaintiff testified that he did it from memory.  (Dep, p. 239)  Then he testified that he had added the new information after consulting his phone records. (Dep, p. 240)  When asked to show defense counsel where in the phone records plaintiff verified that the calls were a.m. or p.m., plaintiff stated "Can't do it" and confirmed that he had not looked at the phone records.  (Dep, p. 240)  Plaintiff also admitted that nothing in his mind jogged his memory as to allow him to remember a.m. or p.m. and that he was just assuming when the calls occurred.  (Dep, pp. 240-241)  Plaintiff further acknowledged that he identified call number three on page two of the log as at 2:25 a.m., even though it had already been established that the call was not from defendant and plaintiff did not know who called him or if it was in regard to the loan.  (Dep, p. 241).

Plaintiff also testified that he received more calls than those recorded in the Log, but that he ran out of space to document them.  (Dep, p. 171) Plaintiff first testified that he received at least twenty more calls from defendant after December 30, 2007 (Dep, pp. 171-172), but he later testified that he only received ten calls and he knew that because he kept a separate scrap piece

of paper documenting the calls (Dep, p. 172).  Plaintiff also testified that he did not know what happened to that paper, but he does not have it anymore.  (Dep, p. 173)

### B. Procedural Background

On or about January 29, 2008, plaintiff filed a complaint against defendant in the 46th Judicial District Court for the State of Michigan alleging that defendant had violated various provisions of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"), the Michigan Collection Practices Act, M.C.L. § 445.251, *et seq.* ("MCPA"), and the Michigan Occupational Code, M.C.L. § 339.915, *et seq.* ("MOC").   (Complaint, attached as part of D/E #1).

On February 13, 2008, defendant filed a notice of removal in the United States District Court for the Eastern District of Michigan (D/E #1).

On October 3, 2008, defendant filed the motion for summary judgment pending before the Court (D/E #6).  In that motion, defendant argues that plaintiff's complaint should be dismissed with prejudice and plaintiff sanctioned monetarily because of plaintiff's actions in fabricating a clearly false Log of calls and for deliberate destroying the original documents plaintiff used in complying that Log.  Defendant also argues that plaintiff's claims pursuant to M.C.L. § 445.251, *et seq.*, should be dismissed for failure to state a claim upon which relief may be granted pursuant Fed. R. Civ. P. 12(b)(6).  Defendant further argues that the Court should grant summary judgment in favor of defendant on plaintiff's claims arising under 15 U.S.C. § 1692 *et seq.* and M.C.L. § 339.915, *et seq.* pursuant to Fed. R. Civ. P. 56(c) because no genuine issue of material fact is in dispute.  Lastly, defendant argues that the Court should fashion other

suitable remedies to sanction plaintiff's deceitful conduct, his and his attorney's wholesale disregard for the discovery process and the Federal Rules of Civil Procedure, and for unnecessarily adding to the cost of litigation.

On November 7, 2008, plaintiff filed a response to defendant's motion for summary judgment (D/E #10). In that response, plaintiff argues that his complaint should not be dismissed as a sanction because plaintiff, being an ordinary person, did not know he should have kept the notes and because the mere fact that plaintiff made some mistakes in the Log does not mean that he fabricated evidence. Plaintiff also argues that defendant never filed a motion to compel discovery and plaintiff produced all the relevant documents in his possession. Plaintiff further argues that he "has produced every piece of evidence he has to support his claim" and that his evidence demonstrates that a genuine issue of material fact is in dispute.

On November 12, 2008, defendant filed a reply to plaintiff's response (D/E #11). In that reply, defendant argues that plaintiff's status as a "lay person" does not excuse his misconduct in destroying evidence and that the sheer number of mistakes in the Log, as well as plaintiff's other conduct, contradicts plaintiff's assertion that he only made some mistakes. Defendant also argues that plaintiff completely failed to respond to defendant's argument that plaintiff failed to state a claim under M.C.L. § 445.251 *et seq.* upon which relief may be granted and, therefore, plaintiff effectively abandoned that claim. Defendant further argues that plaintiff's other claims fail as a matter of law and it is entitled to summary judgment on them.

### III. Discussion

#### A. Dismissal as a Sanction

Plaintiff appears to seek dismissal on the basis that plaintiff committed a fraud upon the Court. The Court's ability to dismiss an entire action due to a fraud on the court may arise under various statutory rules, see Pope v. Federal Express Corporation, 138 F.R.D. 675, 681-683 (W.D. Mo. 1990) (discussing ability to dismiss action under Fed. R. Civ. P. 11, 26(g) and 41(b)) or under the inherent power of the court, see Derzack v. County of Allegheny, Pennsylvania, 173 F.R.D. 400, 412-413 (W.D. Pa. 1996) (exhaustively listing cases wherein courts use their inherent power to curb misconduct when it constitutes fraud on court by dismissing action or entering other sanctions). In this case, defendant requests that this Court dismiss plaintiff's complaint as a sanction and, while defendant does not cite to any specific power of the Court to do so, it appears that defendant is arguing that this case should be dismissed pursuant to the Court's inherent powers.[5]

The Sixth Circuit has long recognized that a trial court's inherent power includes the power to dismiss cases involving flagrant abuses. See Reid v. Prentice-Hall, Inc., 261 F.2d 700, 701 (6th Cir. 1958); Mitan v. International Fidelity Ins. Co., 23 Fed. Appx. 292, 298 (6th Cir. 2001). With respect to the inherent power of courts, the United States Supreme Court in

---

[5]In any event, as noted by the Sixth Circuit, the factors considered when reviewing a dismissal under Rule 41(b), Rule 37(b), or a court's inherent power are largely the same. Coleman v. American Red Cross, 23 F.3d 1091, 1094 n. 1 (6th Cir. 1994). In U.S. v. Reyes, 307 F.3d 451, 458 (6th Cir.2002), the Sixth Circuit held that, in reviewing a district court's dismissal under either Rule 37(b)(2) or Rule 41(b), a court should consider four factors: "(1) whether the party's failure is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered." (quoting Knoll v. Am. Tel. & Tel. Co., 176 F.3d 359, 363 (6th Cir. 1999)).

Chambers v, NASCO, Inc., it "has long been understood that '[c]ertain implied powers must necessarily result to our Courts of justice from the nature of their institution,' powers 'which cannot be dispensed within a Court, because they are necessary to the exercise of all others.'" Chambers v. NASCO, Inc., 501 U.S. 32, 43, 111 S.Ct. 2123, 2132 (1991) quoting United States v. Hudson, 7 Cranch 32, 34, 3 L.Ed. 259 (1812). "For this reason, 'Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates.'" Chambers, 501 U.S. at 43, quoting Anderson v. Dunn, 6 Wheat. 204, 227, 5 L.Ed. 242 (1821). "These powers are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" Chambers, 501 U.S. at 43, quoting Link v. Wabash R. Co., 370 U.S. 626, 630-631, 82 S.Ct. 1386, 1388-1389, 8 L.Ed.2d 734 (1962).

While the Supreme Court encourages district courts to first consider any applicable statutory rules for sanctions, the Supreme Court does not require that district courts do so, and it has held that "the inherent power of a court can be invoked even if procedural rules exist which sanction the same conduct." Chambers, 501 U.S. at 49. See also First Bank of Marietta v. Hartford Underwriters Ins. Co., 307 F.3d 501, 517 (6th Cir. 2002) (stating the Chambers Court "leaves to the district court's 'informed discretion' whether the applicable statutes or rules are 'up to task,' given the circumstances of the particular conduct"). Accordingly, the court's inherent power is broad and can be called upon not only to fill-in the interstices between particular rules of conduct, but also may be referred to in addition to said rules, where

appropriate.  Chambers, 501 U.S. at 46, 50, 111 S.Ct. at 2133-34, 2135-36.  Nevertheless, the

court's inherent power must always be exercised with caution, Chambers, 501 U.S. at 43, 111

S.Ct. at 2132, and the court must take care in the use of inherent powers to impose sanctions.

First Bank of Marietta, 307 F.3d at 516.

        The imposition of inherent power sanctions requires a finding of bad faith or conduct that

is tantamount to bad faith.  First Bank of Marietta,  307 F.3d at 517.  In Chambers, the United

States Supreme Court considered some general contours of the concept of bad faith:

> [A] court may assess attorney's fees when a party has "acted in
> bad faith, vexatiously, wantonly, or for oppressive reasons."  In
> this regard, if a court finds "that fraud has been practiced upon it,
> or that the very temple of justice has been defiled," it may assess
> attorney's fees against the responsible party, as it may when a
> party "shows bad faith by delaying or disrupting the litigation or
> by hampering enforcement of a court order." [Chambers, 501 U.S.
> at 45-46 (citations omitted).]

By way of contrast, a mere mistake "would not meet the requirements for sanctions."  See Mann

v. University of Cincinnati, 114 F.3d 1188, 1997 WL 280188, at *5 (6th Cir. 1997) (citing Ray

A. Scharer & Co. v. Plabell Rubber Prods., Inc., 858 F.2d 317, 322 (6th Cir. 1988)).

Additionally, as noted above, the Sixth Circuit has stated that the factors considered when

reviewing a dismissal under Rule 41(b), Rule 37(b), or a court's inherent power are largely the

same.  Coleman v. American Red Cross, 23 F.3d 1091, 1094 n. 1 (6th Cir. 1994).  In U.S. v.

Reyes, 307 F.3d 451, 458 (6th Cir.2002), the Sixth Circuit held that, in reviewing a district

court's dismissal under either Rule 37(b)(2) or Rule 41(b), a court should consider four factors:

"(1) whether the party's failure is due to willfulness, bad faith, or fault; (2) whether the adversary

was prejudiced by the dismissed party's conduct; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered." (quoting Knoll v. Am. Tel. & Tel. Co., 176 F.3d 359, 363 (6th Cir. 1999)).

When a party fabricates evidence purporting to substantiate its claims, federal case law is well established that dismissal is appropriate. See Aoude v. Mobil Oil Corp., 892 F.2d 1115, 1118 (1st Cir. 1989); Vargas v. Peltz, 901 F. Supp. 1572, 1581 (S.D. Fla. 1995); Pope v. Federal Express Corp., 138 F.R.D. 675, 682-683 (W.D. Mo. 1990) aff'd in relevant part, 974 F.2d 982 (8th Cir. 1992)[6]. For example, Aoude involved a plaintiff's efforts to acquire a Mobil franchise from a Mobil service station operator and to force Mobil to accept the transaction. Aoude, 892 F.2d at 1116. In that case, the plaintiff concocted, backdated, and convinced the Mobil station operator to sign a bogus purchase agreement and the fraudulent agreement was then attached to the complaint. Aoude, 892 F.2d at 1116-1117. When the truth began to emerge, the plaintiff moved to amend his complaint to substitute the authentic agreement for the fraudulent one and, subsequently, the plaintiff filed a second suit in the same federal district court and attached the authentic agreement to the complaint. Aoude, 892 F.2d at 1117. The defendant moved to dismiss both suits based upon the plaintiff's fabrication of evidence and, in reviewing the district court's decision dismiss both actions, the First Circuit found that plaintiff's "odious

_____

[6]On appeal in Pope, the Eighth Circuit affirmed the decision in part, vacated the Rule 11 monetary award and remanded the case for further proceedings to consider a subsequent development in a decision relied upon by the district court. Pope v. Federal Express Corporation, 974 F.2d 982 (8th Cir.1992).

machinations" constituted "fraud on the court." Aoude, 892 F.2d at 1118-1119. Citing cases from several circuits, the First Circuit also concluded that federal district courts have the power to order dismissal or default in cases involving fraud on the court and it affirmed the district court's decision. Aoude, 892 F.2d at 1119.

In Vargas, the plaintiff and her husband made claims pursuant to Title VII against their employer for, among other things, sexual harassment and retaliation. Vargas, 901 F.Supp. at 1573. At the plaintiff's deposition in that case, the plaintiff produced a pair of panties and testified that the defendant had given her the panties and a photograph of himself, and that he had told her that he wanted her to pose in the panties in a position similar to that of the defendant in the photograph. Vargas, 901 F.Supp. at 1574. However, evidence showed that the panties produced by the plaintiff were not manufactured and distributed for sale until after the alleged incident occurred and plaintiff subsequently admitted that the panties she had presented at her deposition had been stolen from a store. Vargas, 901 F.Supp. at 1574-75. In addition, the court in that case found that the plaintiff had lied about threats having been made to her family in Costa Rica and that the plaintiff and her husband had fraudulently attempted to use a State Department letter scheduling plaintiff for an immigration appointment in Costa Rica to show that the defendant was attempting to force her to drop the case by "luring" her to Costa Rica. Vargas, 901 F.Supp. at 1576-78. The court then concluded that introduction of the fabricated panties' evidence and the fabricated use of the State Department letter required dismissal of the action with prejudice and other sanctions. Vargas, 901 F.Supp. at 1578, 1582-1583.

In Pope, the plaintiff asserted claims of sexual harassment pursuant to Title VII against her former employer, Federal Express Corporation, and against her supervisor while there. Pope, 138 F.R.D. at 676. In that case, while the plaintiff testified at her initial deposition that she did not have any documents to corroborate her sexual harassment allegations, at her second deposition she produced the copy of a document laden with sexual content and purportedly authored by plaintiff's supervisor. Pope, 138 F.R.D. at 677. Defendants then moved for sanctions, including dismissal, and asserted that the plaintiff had fabricated the document during discovery. Pope, 138 F.R.D. at 677. At a hearing on the motion to dismiss, plaintiff's counsel admitted that the document had been fabricated and an expert document examiner gave the opinion that the document was a "cut-and-paste" job. Pope, 138 F.R.D. at 678. The court then found that the plaintiff's fabrication of evidence and dishonest conduct warranted involuntary dismissal of her complaint with prejudice pursuant to Fed. R. Civ. P. 41(b). Pope, 138 F.R.D. at 682. In addition, the court concluded that, aside from imposition of sanctions pursuant to the Federal Rules of Civil Procedure, the court has the inherent power to impose such sanctions. Pope, 138 F.R.D. at 683 (citing Hall v. Cole, 412 U.S. 1, 4-5 (1973); Alyeska Pipeline Co. v. Wilderness Society, 421 U.S. 240, 258-59 (1975)). See also TeleVideo Systems, Inc. v. Heidenthal, 826 F.2d 915, 917 (9th Cir. 1987) (default entered as a result of defendant's elaborate scheme involving perjury designed to deceive the court); Sun World, Inc. v. Lizarazu Olivarria, 144 F.R.D. 384, 389-390 (E.D. Cal. 1992) (default entered because plaintiff submitted false document and committed perjury in furtherance of the fraud on the court); Eppes v. Snowden, 656 F. Supp. 1267, 1279 (E.D. Ky. 1986) (as a result of defendant's committing fraud

on the court by submitting "backdated" letters, defendant's answer and counterclaim were stricken pursuant to the inherent powers of the court); <u>McDowell v. Seaboard Farms of Athens, Inc.</u>, No. 95-609-CIV-ORL-19, 1996 WL 684140 *2 (M.D. Fla. November 4, 1996) (granting motion for involuntary dismissal due to fabrication of evidence as fraud on court).

In this case, plaintiff produced the Log as evidence of the calls defendant allegedly made. However, during the course of discovery it became clear that plaintiff merely fabricated the Log in order to support his claims. Regarding the identity of callers, plaintiff asserted that Log documented twenty phone calls defendant's representatives made to plaintiff at various times of the day between November 30, 2007 and December 30, 2007. However, plaintiff later conceded, when confronted with evidence regarding the true origins of the calls, that a number of the listed calls were not from defendant at all or that did not know if the calls were from defendant. According to plaintiff, mistakes were made when he just assumed any number he did not recognize was one of defendant's numbers. Regarding the content of the calls, while plaintiff identified defendant as making twelve "nasty" calls, he later testified that he only indicated that the calls were "nasty" because he was tired of writing. Regarding the times of calls, as discussed above, plaintiff added "a.m." or "p.m." to the times on the Log during a break in his deposition testimony. Plaintiff then testified that he had added the information from memory before claiming that he only added the new information after consulting his phone records. When asked to show defense counsel where in the phone records plaintiff verified that the calls were a.m. or p.m., plaintiff merely stated "can't do it" and confirmed that he had not looked at the phone records and that he was just assuming when the calls occurred.

This Court's finds that plaintiff's creation of and reliance on the Log constitutes bad faith. Plaintiff argues in his response brief that he merely made some mistakes, but the sheer volume and breadth of the falsehoods in the Log belie that claim. As noted by defendant, only five of the phone numbers listed in the Log actually belong to defendant and only one call[7] out of those five is corroborated by plaintiff's own phone records. Therefore, on the basis of the evidence before the Court, only one call in the entire log accurately documents a call from defendant. Moreover, plaintiff's complete disregard for the truth when adding a.m. or p.m. to the time of the phone calls and when responding to questions about those additions demonstrates that he was not merely making mistakes. Additionally, while plaintiff's brief asserts that he made some mistakes in formulating the log, the brief still continues to rely on the obviously false evidence. Plaintiff did not make a mistake and this Court finds that his conduct in creating, amending and relying on the obviously fabricated Log constitutes bad faith.

This Court also finds that plaintiff's bad faith justifies dismissing this action. Dismissal of a lawsuit, to be sure, is among the harshest of sanctions. However, the severity of the misdeed here compels such harshness as the manufactured document would have been the linchpin of plaintiff's case. Indeed, the Log remains the primary piece of evidence plaintiff relies upon in his response to defendant's motion for summary judgment. Moreover, defendant was prejudiced by plaintiff's misconduct as it had to expend resources in an effort to unravel plaintiff's lies and less serious sanctions would not be effective in this case. Plaintiff's misconduct goes to a dispositive issue and permitting this lawsuit to proceed would be an open invitation to abuse the judicial

---

[7]The December 18, 2007 call at 5:09 p.m. that lasted for one minute or less.

process.  If the manufactured evidence is merely excluded, as suggested by plaintiff's counsel at oral argument, future litigant could infer that they have everything to gain, and nothing to lose, by manufacturing evidence.[8]

### B. Dismissal for Failure to State a Claim

Defendant also argues that plaintiff's claims under M.C.L. § 445.251, *et seq.*, should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because plaintiff failed to state a claim upon which relief may be granted.  Plaintiff did not respond to that argument in his response brief.

### 1. Standard of Review

When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court "must accept all well-pleaded factual allegations of the complaint as true and construe the complaint in the light most favorable to the plaintiff."  Benzon v. Morgan Stanley Distrib., Inc., 420 F.3d 598, 605 (6th Cir. 2005)(citing Inge v. Rock Fin. Corp., 281 F.3d 613, 619 (6th Cir. 2002)).  See also Insomnia, Inc. v. City of Memphis, 278 Fed. Appx. 609, 611 (6th Cir. 2006).  Dismissal is appropriate "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  Trzebuckowski v. City of Cleveland, 319 F.3d 853, 855 (6th Cir. 2003) (quoting Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)).

---

[8]Defendant also argues that plaintiff's complaint should be dismissed as a sanction for plaintiff's discovery abuses, which include a failure to sign discovery responses or produce certain discovery documents.  Defendant never filed any motions regarding the alleged inadequate discovery and discovery closed in this matter on August 29, 2008 (D/E #4).  Given defendant's failure to address the alleged deficiencies prior to the close of discovery, when they could have been remedied, it is recommended that defendant's request for sanctions relating to discovery abuses be denied.

**2. Discussion**

As discussed above, plaintiff alleges that defendant violated the Michigan Collection Practices Act, M.C.L. § 445.251, *et seq.* ("MCPA"). Pursuant § 445, the MCPA only prohibits actions by regulated persons and a regulated person is "a person whose collection activities are confined and are directly related to the operation of a business other than that of a collection agency." M. C. L. § 445.251(g)(xi); § 445.252. In light of that definition, and as found by the court in Gradisher v. Check Enforcement Unit, Inc., 133 F.Supp.2d 988, 992-993 (W.D. Mich. 2001), under the MCPA, anyone who collects debts is either a "collection agency" or a "regulated person." In this case, plaintiff's complaint identifies defendant as a debt collector who regularly attempts to collect consumer debts alleged to be due others. As such, defendant is a collection agency, rather than a regulated person, for purposes of the MCPA and it is not covered by the provisions of that statute. Given that defendant is not a regulated person under the MCPA, plaintiff has failed to state a claim upon which relief can be granted pursuant to that act and his MCPA claims should be dismissed.

**C. Summary Judgment**

**A. Standard of Review**

Federal Rule of Civil Procedure 56(b) provides that "[a] party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time,

move without or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof."  Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-movant.  See Matsushita Electric Industrial Co., Ltd. et al. v. Zenith Radio Corp., et. al., 475 U.S. 547, 587, 106 S.Ct. 1348, 1356 (1986); see also B.F. Goodrich Co. v. U.S. Filter Corp., 245 F.3d 587, 591-92 (6th Cir. 2001).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  Once the moving party has carried his burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial."  Matsushita, 475 U.S. at 587, 106 S.Ct. 1348.  The opposing party cannot merely rest upon the allegations contained in his pleadings.  Rather, he must submit evidence demonstrating that material issues of fact exist. Banks v. Wolfe County Bd. of Educ., 330 F.3d 888, 892 (6th Cir. 2003); Fed. R. Civ. P. 56(e). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587, 106 S.Ct. 1348 (quoting First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 289, 88 S.Ct. 1575, 1592 (1968)).

**B. Discussion**

Defendant contends that it is entitled to summary judgment on plaintiff's claims made pursuant to the FDCPA and MOC. The Sixth Circuit has recognized that:

> Congress enacted the FDCPA in order 'to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.' <u>Federal Home Loan Mortg. Corp. v. Lamar</u>, 503 F.3d 504, 508 (6th Cir. 2007) (quoting 15 U.S.C. § 1692e).]

Though the FDCPA is intended to provide protection to consumers, it is not wholly "one-sided" in favor of consumers. <u>Federal Home</u>, 503 F.3d at 510. Consistent application of the FDCPA promotes "standards [ ] intended to protect collectors against bizarre or idiosyncratic interpretations of collection notices." <u>Federal Home</u>, 503 F.3d at 510. Thus, courts are to apply the FDCPA "with some circumspection." <u>Federal Home</u>, 503 F.3d at 510. With that in mind the Court turns its attention to the claims at hand.

**a. 15 U.S.C. § 1692d**

"A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. In this case, plaintiff alleges that defendant violated § 1692d in three ways: using obscene or profane language or language the natural consequence of which is the abuse the hearer or reader (§ 1692d(2)), cause a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number (§ 1692d(5)), and placing telephone calls without meaningful disclosure of the caller's identity (§ 1692d(6)).

Defendant is entitled to summary judgment on all of plaintiff's claims made pursuant to 15 U.S.C. § 1692d because no genuine issue of material fact exists as to those claims. With respect to § 1692d(2), plaintiff argues that his deposition testimony clearly provides that defendant's representatives were "rude and obnoxious" to him (Dep, p. 84) However, that deposition testimony was in reference to an alleged call that occurred at least a couple months before October 11, 2007 (Dep, p. 83) and, according to defendant's records, defendant did not begin attempting to collect the debt through letters and telephone calls until on or about October 1, 2007. (Defendant's Collection Notes, attached as Exhibit 1 to Defendant's Motion for Summary Judgment) Plaintiff did not submit any phone records demonstrating that such a call occurred. Moreover, plaintiff concedes he was receiving calls from ECMC and possibly other debt collectors during that time he was receiving calls from defendant (Dep, p. 115), and that, if someone called him and was nasty, they could have been from somewhere other than defendant (Dep, p. 232). In light of that evidence and the lack of corroboration for plaintiff's deposition testimony, a rational trier of fact viewing the evidence and drawing all reasonable inferences in favor of plaintiff could not find for plaintiff and there is no genuine issue for trial.[9]

With respect to § 1692d(5), plaintiff asserts that his allegations that defendant called him every day, ten to fifteen times in one day, as early as 2:30 a.m. and after 9:00 p.m. are "supported by his call logs and the phone records he has produced." (Plaintiff's Response Brief, p. 9) However, as discussed above and as conceded by plaintiff throughout his deposition testimony,

---

[9]Defendant is also entitled to summary judgment on the claim plaintiff made pursuant to M.C.L. § 339.915(o) for the same reasons he should be granted summary judgment on plaintiff's § 1692d(2) claim.

the Log produced by plaintiff is woefully inaccurate and it fails to provide any support for plaintiff's claims. Moreover, plaintiff makes no attempt in his response brief to link any specific calls in the phone records to defendant while defendant provided an affidavit that, when read in conjunction with the phone records, demonstrated that defendant's employees only called plaintiff twenty-five times between August 8, 2007 and December 18, 2008, the earliest time defendant called was 8:59 a.m., the latest time defendant called plaintiff was 8:22 p.m., and the most defendant called plaintiff in one day was three times: on November 8, 2007, defendant called plaintiff three times with the duration of the calls being thirty-nine minutes, one minute and eighteen minutes. Therefore, while plaintiff points to the Log and phone records as support, that evidence fails to demonstrate the existence of a genuine issue of material fact and defendant is entitled to summary judgment on plaintiff's § 1692d(5) claim.[10]

With respect to § 1692d(6), plaintiff asserts that "Defendant has not provided a bona fide error argument to refute its [sic] claim that it violated the FDCPA with regard to failing to identify itself." (Plaintiff's Response Brief, p. 12)   However, defendant did not make a bona fide error argument and, instead, argued that no violation occurred.  Plaintiff has not cited to any evidence suggesting that such a violation did occur.  In responding to a motion for summary judgment, the opposing party cannot merely rest upon the allegations contained in his pleadings and, instead, he must submit evidence demonstrating that material issues of fact exist.  <u>Banks</u>, 330 F.3d at 892; Fed. R. Civ. P. 56(e).  By not making an argument and submitting no evidence,

---

[10]Defendant is also entitled to summary judgment on plaintiff's claims under 15 U.S.C. § 1692c(1) and M.C.L. § 339.915(n) for the same reasons it should be granted summary judgment on the § 1692d(5) claim.

plaintiff failed to meet his burden of demonstrating that a material issue of fact exists as to his claim pursuant to § 1692d(6) and defendant is entitled to summary judgment on that claim.[11]

**b. 15 U.S.C. § 1692e**

"A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. This includes "the false representation of the character, amount, or legal status of any debt ... or [t]he threat to take any action that cannot legally be taken or that is not intended to be taken." 15 U.S.C. § 1692e(2,5). "Congress intended [§ 1692e] to eliminate unfair debt-collection practices, such as late-night telephone calls, false representations, and embarrassing communications." Lewis v. ACB Business Serv., Inc., 135 F.3d 389, 398 (6th Cir. 1998). "In determining whether a debt collector's practice is deceptive within the meaning of the [FDCPA], courts apply an objective test based on the understanding of the least sophisticated consumer." Lewis, 135 F.3d at 400. Though the standard is that of the least sophisticated consumer, the communication is to still be carefully viewed in its entirety. Federal Home, 503 F.3d at 511.

Plaintiff contends that defendant violated § 1692e in five ways: falsely representing the character, amount or legal status of the debt (§ 1692e(2)(A)), threatening to take an action that cannot legally be taken or is not intended to be taken (§ 1692e(5)), communicating or threatening to communicate credit information which is known or should be known to be false, including the failure to communicate that a disputed debt is disputed (§ 1692e(8)), using false representations,

---

[11]Defendant is also entitled to summary judgment on the claim plaintiff made pursuant to M.C.L. § 339.915(g) for the same reasons he should be granted summary judgment on plaintiff's § 1692d(6) claim.

deceptive means and inaccurate, misleading, untrue or deceptive statements in an effort to collect the debt (§ 1692e(10)), failing to disclose that defendant was attempting to collect a debt (§ 1692e(11)).

Defendant is entitled to summary judgment on all of plaintiff's claims made pursuant to 15 U.S.C. § 1692e because no genuine issue of material fact exists as to those claims. With respect to § 1692e(2)(A), § 1692e(5), § 1692e(8) and § 1692e(10), plaintiff merely asserts in his response that, while he has consistently stated that he does not owe the debt and that he has filled out Loan Discharge papers to that effect (Loan Discharge Papers, attached as Exhibits 3 and 4 to Plaintiff's Response to Defendant's Motion for Summary Judgment). Plaintiff also asserts that he sent a validation notice to defendant and defendant proceeded to garnish plaintiff's wages. However, as noted by defendant, plaintiff's unsupported conclusion that he does not owe the debt is not evidence that defendant violated the FDCPA, especially where plaintiff's Loan Discharge papers were not accepted by ESMC or the federal government, and the federal government, not defendant, garnished plaintiff's wages. (Government Garnishment Letter, attached as Exhibit 18 to Defendant's Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment). Moreover, plaintiff clearly provides no evidence regarding how defendant falsely representing the character, amount or legal status of the debt, the identity of whom defendant either communicated or threatened to communicate credit information, and what credit information defendant communicated. Given the lack of probative value in the evidence plaintiff did submit, as well as the fact that he incorrectly identify defendant as the party garnishing his

wages, plaintiff has failed to demonstrate that a genuine issue of material fact exists with respect to his claims under § 1692e(2)(A), § 1692e(5), § 1692e(8) and § 1692e(10).[12]

In his response brief, plaintiff does not make any arguments regarding why summary judgment should not be granted on his claim made pursuant to § 1692e(11). In responding to a motion for summary judgment, the opposing party cannot merely rest upon the allegations contained in his pleadings and, instead, he must submit evidence demonstrating that material issues of fact exist. <u>Banks</u>, 330 F.3d at 892; Fed. R. Civ. P. 56(e). By not making an argument and submitting no evidence, plaintiff failed to meet his burden of demonstrating that a material issue of fact exists as to his claim pursuant to § 1692e(11) and defendant is entitled to summary judgment on that claim.

### c. § 1692f

"A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. In this case, plaintiff alleges that defendant violated § 1692f by collecting an amount not expressly authorized by the agreement creating the debt or permitted by law (§ 1692f(1)).

Defendant is entitled to summary judgment on plaintiff's claim made pursuant to 15 U.S.C. § 1692f(1) because no genuine issue of material fact exists as to that claim. In support of

---

[12]Defendant is also entitled to summary judgment on plaintiff's claims made pursuant to M.C.L. § 339.915(e) and M.C.L. § 339.915(f)(ii) for the same reasons he is entitled to summary judgment on plaintiff's § 1692e(2)(A), § 1692e(5), § 1692e(8) and § 1692e(10) claims.

his claim, plaintiff merely asserts that, while he has consistently stated that he does not owe the debt and that he has filled out Loan Discharge papers to that effect (Loan Discharge Papers, attached as Exhibits 3 and 4 to Plaintiff's Response to Defendant's Motion for Summary Judgment).  Plaintiff also asserts that he sent a validation notice to defendant and defendant proceeded to garnish plaintiff's wages.   However, as discussed above with respect to § 1692e, plaintiff's unsupported conclusion that he does not owe the debt is not evidence that defendant violated the FDCPA, especially where plaintiff's Loan Discharge papers were not accepted by ESMC or the federal government, and the federal government, not defendant, garnished plaintiff's wages.  (Government Garnishment Letter, attached as Exhibit 18 to Defendant's Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment).  Given the lack of probative value in the evidence plaintiff did submit, as well as the fact that he incorrectly identify defendant as the party garnishing his wages, plaintiff has failed to demonstrate that a genuine issue of material fact exists with respect to his claims under § 1692f(1).

### d. M.C.L. § 339.915(q)

M.C.L. § 339.915(q) provides that a licensee covered by the Michigan Occupational Code, M.C.L. § 339.915, *et seq.* ("MOC") shall not fail "to implement a procedure designed to prevent a violation by an employee."  In this case, plaintiff alleges that defendant violated that statute and plaintiff is entitled to summary judgment on that claim.  In support of his allegation, plaintiff merely asserts in his response brief that defendant clearly failed to implement any such procedures in this case given the numerous violations of the MOC committed by defendant's

employees.  (Plaintiff's Brief in Response to Defendant's Motion for Summary Judgment, p. 13)

However, as discussed above, in responding to a motion for summary judgment, the opposing

party cannot merely rest upon the allegations contained in his pleadings and, instead, he must

submit evidence demonstrating that material issues of fact exist.  <u>Banks</u>, 330 F.3d at 892; Fed. R.

Civ. P. 56(e).  By merely resting on his conclusory allegations and submitting no evidence,

plaintiff failed to meet his burden of demonstrating that a material issue of fact exists as to his

claim pursuant to M.C.L. § 339.915(q) and defendant is entitled to summary judgment on that

claim.

## IV. Conclusion

For the reasons discussed above, it is recommended that defendant's motion be

**GRANTED** and that plaintiff's complaint be dismissed as a sanction for plaintiff's misconduct.

In the alternative, it is recommended that plaintiff's MCPA claims be dismissed for failure to

state a claim upon which relief may be granted and that defendant be granted summary judgment

as to the rest of plaintiff's claims.

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to act within ten (10) days of service of a copy hereof as

provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific

objections constitutes a waiver of any further right of appeal.  <u>Thomas v. Arn</u>, 474 U.S. 140

(1985); <u>Howard v. Secretary of HHS</u>, 932 F.2d 505, 508 (6th Cir. 1991); <u>United States v.</u>

<u>Walters</u>, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues,

but fail to raise others with specificity, will not preserve all the objections a party might have to

this Report and Recommendation. <u>Willis v. Secretary of HHS</u>, 931 F.2d 390, 401 (6th Cir. 1991); <u>Smith v. Detroit Fed'n of Teachers Local 231</u>, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

<div style="margin-left:40%">

s/Virginia M. Morgan             
Virginia M. Morgan
United States Magistrate Judge

</div>

Dated: December 5, 2008

---

<div align="center">**PROOF OF SERVICE**</div>

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System and/or U. S. Mail on December 5, 2008.

<div style="margin-left:40%">

s/Jane Johnson
Case Manager to
Magistrate Judge Virginia M. Morgan

</div>